**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| ANTHONY MORGAN, | ) Case No. |
| Plaintiff, | ) |
| v. | ) **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| EVOQUA WATER TECHNOLOGIES CORP., RON C. KEATING, MARTIN J. LAMB, PETER M. WILVER, GARY A. CAPPELINE, LISA GLATCH, JULIA A. SLOAT, NICK BHAMBRI, SHERRESE CLARKE SOARES, and LYNN C. SWANN, | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

Plaintiff Anthony Morgan ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Evoqua Water Technologies Corp. ("Evoqua" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Xylem Inc. ("Xylem").[1]

2. On January 22, 2023, the Company entered into an Agreement and Plan of

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

Merger (the "Merger Agreement")with Xylem and Xylem's subsidiary, Fore Merger Sub, Inc. ("Merger Sub"). The Merger Agreement provides that Merger Sub will merge with and into Evoqua, with Evoqua surviving as a wholly owned subsidiary of Xylem and Evoqua stockholders receiving 0.48 shares of Xylem common stock for each share of Evoqua common stock they own. Upon closing of the Proposed Transaction, Evoqua stockholders are expected to own approximately 25% of the combined company's common stock, with Xylem stockholders owning approximately 75% of the combined company's common stock.

3. The Company's corporate directors subsequently authorized the April 11, 2023, filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[2]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the

---

[2] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for May 11, 2023.

defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of EVOQUA common stock.

10. Defendant Evoqua is a Delaware corporation with its principal executive offices located at 210 Sixth Avenue, Pittsburgh, Pennsylvania 15222. Evoqua's shares trade on the New York Stock Exchange under the ticker symbol "AQUA." Evoqua provides water and wastewater treatment systems and technologies, and mobile and emergency water supply solutions and contract services for industrial, commercial, and municipal water treatment markets in the United States and internationally. The Company operates through two segments: Integrated Solutions and Services, and Applied Product Technologies. The Integrated Solutions and Services segment offers outsourced water service contracts, capital systems and related

recurring aftermarket services, parts and consumables, and emergency services for treating process water, utility water, and wastewater.  In addition, it provides odor and corrosion control services and drinking water treatment systems for municipalities.  The Applied Product Technologies segment provides advanced filtration and separation products, such as VAF self-cleaning filters, Ionpure electrodeionization systems, and Vortisand filtration systems, as well as filter presses and related consumables, and aftermarket products for customers in the microelectronics, pharmaceutical, and power end markets.  In addition, it provides disinfection solutions, wastewater technologies, and aquatics and electrochlorination solutions.

11. Defendant Ron C. Keating is and has been President, Chief Executive Officer and a director of the Company at all times relevant hereto.

12. Defendant Martin J. Lamb is and has been a director of the Company at all times relevant hereto.

13. Defendant Peter M. Wilver is and has been a director of the Company at all times relevant hereto.

14. Defendant Gary A. Cappeline is and has been Chairman of the Board and a director of the Company at all times relevant hereto.

15. Defendant Lisa Glatch is and has been a director of the Company at all times relevant hereto.

16. Defendant Julia A. Sloat is and has been a director of the Company at all times relevant hereto.

17. Defendant Nick Bhambri is and has been a director of the Company at all times relevant hereto.

18. Defendant Sherrese Clarke Soares is and has been a director of the Company at all times relevant hereto.

19. Defendant Lynn C. Swann is and has been a director of the Company at all times relevant hereto.

20. Defendants identified in paragraphs 11-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

21. On January 23, 2023, Xylem and the Company jointly announced in relevant part:

> WASHINGTON--(BUSINESS WIRE)--Xylem Inc. (NYSE: XYL), a leading global water technology company ("Xylem"), and Evoqua (NYSE: AQUA), a leader in mission-critical water treatment solutions and services, today announced they have entered into a definitive agreement under which Xylem will acquire Evoqua in an all-stock transaction that reflects an implied enterprise value of approximately $7.5 billion.
>
> As water risks rise in global importance, this transaction unites two companies with a shared focus on solving the world's water challenges by addressing customers' and communities' most critical needs. Building on Xylem's global leadership in water solutions and Evoqua's leadership in advanced treatment solutions and services, the combined company will be uniquely positioned to develop and deliver an even more comprehensive offering of innovative solutions.
>
> Evoqua, a leader in North America water treatment, complements Xylem's distinctive portfolio of solutions with advanced water and wastewater treatment capabilities, a powerful and extensive network of service professionals and access to a number of attractive industrial markets with resilient, recurring revenue streams.  Evoqua's solutions, including digitally enabled offerings, optimize and outsource mission-critical water treatment systems for customers in high-growth sectors such as life sciences, microelectronics, power and food and beverage.  In addition, Evoqua is a leader in the remediation of emerging contaminants, including PFAS.

Xylem and Evoqua generated over $7 billion in combined revenue in the 12-month period ending September 30, 2022, with $1.2 billion in adjusted EBITDA. The combination unlocks compelling new growth opportunities and is expected to deliver run-rate cost synergies of $140 million within three years, driven by scale efficiencies in procurement, network optimization and corporate costs. In addition, the transaction allows Xylem to maintain its strong balance sheet, which provides the combined company with significant strategic flexibility and optionality.

"Solving the world's water challenges has never been more urgent. Our acquisition of Evoqua creates a transformative global platform to address water scarcity, affordability and resilience at even greater scale," said Patrick Decker, President and CEO of Xylem. "The combined company delivers an unparalleled portfolio of advanced technologies, integrated services and application expertise across the water cycle."

"Together, our complementary businesses will be even more strongly positioned to help our customers and communities tackle their most challenging water needs," continued Decker. "We are excited about building the world's most powerful platform for solving water alongside our Evoqua colleagues."

"Joining forces with Xylem is an exciting opportunity for Evoqua and for our team members. This combination provides a platform to leverage our combined strengths and increase our impact to better address the most pressing and increasingly complex global water challenges," said Ron Keating, Evoqua's President and CEO. "I am incredibly proud of what our team at Evoqua has achieved to date, providing mission-critical water treatment solutions to the market and for our customers. Along the way, we have earned a reputation for quality, safety and reliability around the world. Together with Xylem, we will drive innovation on a larger scale for our customers, positioning us to create even more value for our stakeholders."

**Transaction Details**

Evoqua shareholders will receive 0.480 shares of Xylem for each Evoqua share, representing a value of $52.89 per share or a 29 percent premium based on Xylem and Evoqua closing prices as of January 20, 2023.

The transaction, which is anticipated to close in mid-2023, is subject to approval by shareholders of Xylem and Evoqua, the receipt of required regulatory approvals and other customary closing conditions.

Upon closing, Xylem shareholders will own approximately 75 percent and Evoqua shareholders will own approximately 25 percent of the combined company on a fully diluted basis.

Following the closing, the combined company will continue to be led by Patrick Decker, Xylem's President and CEO.  Two current members of the board of directors of Evoqua are expected to join Xylem's board of directors.

**Advisors**

Lazard and Guggenheim Securities served as financial advisors and Gibson, Dunn & Crutcher LLP served as legal advisor to Xylem.  Goldman Sachs & Co. LLC and BofA Securities served as financial advisors and Jones Day served as legal advisor to Evoqua.

**The Materially Incomplete and Misleading Proxy Statement**

22. The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on April 11, 2023  The Proxy Statement, which recommends that Evoqua stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the financial projections for Xylem, Evoqua and the combined company; (b) the financial analyses that support the fairness opinions provided by the Company's financial advisors Goldman Sachs & Co. LLC ("Goldman") and BofA Securities, Inc. ("BofA"); and (c) potential conflicts of interest faced by BofA and Company insiders.[3]

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for Xylem, Evoqua and the Combined Company*

23. The Proxy Statement fails to disclose material information concerning the financial projections for Xylem, Evoqua and the combined company.

24. For example, with respect to the "Xylem Management Forecasted Financial Information," the Proxy Statement fails to disclose all line items underlying (a) Adjusted EBIT;

---

[3] Goldman and BofA shall be collectively referred to herein as the "Financial Advisors."

(b) Adjusted EBITDA (burdened by SBC); (c) Adjusted EBITDA (unburdened by SBC); and (d) Unlevered Free Cash Flow.

25. Similarly, with respect to the "Evoqua Management Forecasted Financial Information Including M&A" and "Evoqua Management Forecasted Financial Information Excluding M&A," the Proxy Statement fails to disclose all line items underlying (a) Adjusted EBIT; (b) Adjusted EBITDA; and (c) Unlevered Free Cash Flow.

26. Finally, with respect to the "Evoqua Integrated Forecasted Financial Information," the Proxy Statement fails to disclose all line items underlying (a) Adjusted EBIT; (b) Adjusted EBITDA; and (c) Unlevered Free Cash Flow.

*Material Misrepresentations and/or Omissions Concerning Goldman's and BofA's Financial Analyses*

27. The Proxy Statement fails to disclose material information concerning Goldman's financial analyses.

28. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis – Evoqua Standalone*, the Proxy Statement fails to disclose: (a) the Company's terminal values; (b) Evoqua's terminal year EBITDA; (c) the inputs and assumptions underlying the discount rates ranging from 9.0% to 10.5% and the discount rate of 7.4%; (d) the estimated benefits of the Company's net operating losses ("NOLs"); (e) Evoqua's net debt; and (f) the Company's fully diluted outstanding shares.

29. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis – Pro Forma Combined Company*, the Proxy Statement fails to disclose: (a) the pro forma combined company's terminal values; (b) the pro forma combined company's terminal year EBITDA; (c) the inputs and assumptions underlying the discount rates ranging from 9.0% to 10.5% and the

discount rate of 5.1%; (d) the estimated benefits of the pro forma combined company's NOLs; (e) the pro forma combined company's net debt; and (f) the pro forma combined company's fully diluted outstanding shares.

30. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis – Evoqua Standalone*, the Proxy Statement fails to disclose: (a) Evoqua's forward adjusted EBITDA unburdened by stock-based compensation for each of the fiscal years 2023 and 2024; (b) Evoqua's net debt for each of the fiscal years 2023 and 2024; (c) the projected year-end number of fully diluted outstanding shares of Evoqua common stock for each of the fiscal years 2023 and 2024; and (d) the inputs and assumptions underlying the discount rate of 10.5%.

31. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis – Pro Forma Combined Company*, the Proxy Statement fails to disclose: (a) the pro forma forward adjusted EBITDA unburdened by stock-based compensation for each of the fiscal years 2023 and 2024; (b) the run rate cost synergies; (c) the combined company's net debt for each of the fiscal years 2023 and 2024; (d) the projected year-end number of combined company common stock for each of the fiscal years 2023 and 2024; (e) the cumulative pro forma dividends per share for each of the fiscal years 2023 and 2024 projected to be paid to the combined company's stockholders; and (f) the inputs and assumptions underlying the discount rate of 10.5%.

32. With respect to Goldman's *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (a) the individual financial metrics for each of the selected transactions analyzed by Goldman; (b) Evoqua's LTM adjusted EBITDA as of December 31, 2022; (c) the

net debt of Evoqua as of December 31, 2022; and (d) the Company's fully diluted outstanding shares.

33. With respect to Goldman's *Premia Paid Analysis*, the Proxy Statement fails to disclose: (a) the transactions analyzed; and (b) the individual premiums observed for each transaction.

34. The Proxy Statement also fails to disclose material information concerning BofA's financial analyses.

35. With respect to BofA's *Discounted Cash Flow Analysis* of Evoqua based on the Evoqua Management Forecasted Financial Information Including M&A and the Evoqua Management Forecasted Financial Information Excluding M&A, the Proxy Statement fails to disclose: (a) the Company's terminal values; and (b) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%.

36. With respect to BofA's *Selected Publicly Traded Companies Analysis* of Evoqua, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by BofA.

37. With respect to BofA's analysis of equity research analyst price targets for Evoqua, the Proxy Statement fails to disclose: (a) the individual price targets observed; and (b) the sources thereof.

38. With respect to BofA's *Discounted Cash Flow Analysis* of Xylem, the Proxy Statement fails to disclose: (a) Xylem's terminal values; and (b) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%.

39. With respect to BofA's *Selected Publicly Traded Companies Analysis* of Xylem, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by BofA.

40. With respect to BofA's *Pro Forma Accretion/Dilution Analysis*, the Proxy Statement fails to disclose: (a) Xylem's pro forma fiscal years ending December 31, 2024 and December 31, 2025, respectively, estimated adjusted EPS; (b) the dilution to Xylem's estimated adjusted EPS for Xylem fiscal years ending December 31, 2024 and December 31, 2025, respectively, and (c) the accretion to Xylem's estimated cash adjusted EPS for Xylem fiscal years ending December 31, 2024 and December 31, 2025, respectively.

41. With respect to BofA's analysis of equity research analyst price targets for Xylem, the Proxy Statement fails to disclose: (a) the individual price targets observed; and (b) the sources thereof.

*Material Misrepresentations and/or Omissions Concerning BofA's and Company Insiders' Potential Conflicts of Interest*

42. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by BofA, including the details of any services BofA provided to Xylem or its affiliates, in the two years preceding the date of its fairness opinion and the amount of compensation BofA has received for such services provided.

43. The Proxy Statement further fails to disclose the compensation BofA has received, or expects to receive, in connection with the commercial credit and treasury services BofA has provided and is currently providing to Evoqua.

44. The Proxy Statement also fails to disclose material information concerning Company insiders' potential conflicts of interest, including whether any of Xylem's proposals

or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

45. The omission of the above-referenced information renders statements in the "Certain Unaudited Forecasted Financial Information," "Opinions of Evoqua's Financial Advisors," "Background of the Merger," and "Interests of Evoqua's Directors and Executive Officers in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and EVOQUA**

46. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Evoqua is liable as the issuer of these statements.

48. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual

Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

49. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

51. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

52. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

54. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of Evoqua within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Evoqua and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

58. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: April 20, 2023                    **LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com

*Attorneys for Plaintiff*

15